Ferrarese v. Menu Foods, Inc. et al — Doc. 21 Att. 1
Case 2:07-cv-00235-JES-DNF  Document 21-2  Filed 05/15/2007  Page 1 of 13
Case 2:07-cv-00235-JES-DNF  Document 1  Filed 04/16/2007  Page 1 of 13

FILED

2007 APR 16 PM 1:50

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT MYERS DIVISION

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARIA TERESA FERRARESE,
individually, and on behalf of all
others similarly situated,

    Plaintiff,

v.

MENU FOODS INC., MENU FOODS
MIDWEST CORPORATION,
MENU FOODS INCOME FUND, and
MENU FOODS LIMITED,

    Defendants.
_____/

2:07-cv-335-FtM-29DNF

Case No. _____

COMPLAINT - CLASS ACTION
JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff, MARIA TERESA FERRARESE, individually and on behalf of all others similarly situated, by and through her undersigned counsel, hereby sues Defendants Menu Foods Inc., Menu Foods Midwest Corporation, Menu Foods Income Fund, and Menu Foods Limited (collectively, "Defendants") pursuant to Rule 23 of the Federal Rules of Civil Procedure, for breach of express warranty, breach of implied warranty of merchantability, negligence and unjust enrichment and seeks damages, attorneys' fees, and costs on behalf of herself and all others similarly situated (the "Class"), and upon information and belief, alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this class action for breach of express warranty, breach of implied warranty of merchantability, negligence and unjust enrichment to redress the harms resulting from the manufacture, production, and sale by Defendants of dog and cat food marketed under over 90 brand names.

SCANNED

2. Defendants manufacture and sell over 90 brands of pet food for cats and dogs, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. On March 16, 2007, the Menu Foods Income Fund issued a press release announcing the recall of 60 million cans of contaminated dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of Menu Foods Limited's U.S. manufacturing facilities - Menu Foods, Inc. and Menu Foods Midwest Corporation, located in New Jersey and Kansas, respectively.

3. The recalled pet food that Plaintiff and Class members purchased and fed to their pets caused their pets to become ill through kidney disease, requiring veterinarians visits, medications, hospitalizations and, in some cases, burials of those pets that died due to renal failure caused by the contaminated pet food. Many pets that consumed the recalled tainted food now require ongoing monitoring of their health to ascertain the extent of the damage to their kidneys.

4. Plaintiff makes the following allegations, except as to the allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel, which included, inter alia, review and analysis of Defendants' website, press releases, news articles, and pleadings filed in other suits.

## PARTIES

5. Plaintiff MARIA TERESA FERRARESE resides in Cape Coral, Florida. Plaintiff purchased and fed her dog, Publix and Ol'Roy canned dog food that was manufactured by Defendants during the Class Period. Plaintiff's dog, whose name was Yuri, became gravely ill and despite treatment by a veterinarian, had to be euthanized when nothing more could be

done to save him. In addition to the cost of purchasing the contaminated food, Plaintiff incurred economic costs in connection with the medical treatment, euthanasia and burial of her dog.

6. Defendant Menu Foods Inc. ("MFI") is a New Jersey corporation, with its headquarters at 9130 Griffith Mogan Lane, Pennsauken, NJ 08110. MFI has done business throughout the United States and in the State of Florida at all times relevant to this lawsuit. MFI manufactures pet food for distribution in the United States. MFI is a wholly-owned subsidiary of Menu Foods Limited, and is ultimately owned or controlled by Menu Foods Income Fund, an unincorporated company with its principal place of business in the Province of Ontario, Canada. Some of Defendant MFI's high managerial officers and agents with substantial authority are also high managerial officers or agents of Menu Foods Income Fund.

7. Menu Foods Limited ("MFL") is a Canadian corporation located at 8 Falconer Dr., Mississauga, ON , L5N IBI and has done business throughout the United States and in the State of Florida at all times relevant to this lawsuit. MFL is the parent company of, and wholly-owns, both MFI, located in Pennsauken, New Jersey, and MFMC located in Emporia, Kansas.

8. Defendant Menu Foods Midwest Corporation ("MFMC") is a Delaware corporation, with its headquarters at P.O. Box 1046, 1400 East Logan Ave., Emporia, KS 66801. MFMC has done business throughout the United States and in the State of Florida at all times relevant to this lawsuit. MFMC is a wholly-owned subsidiary of MFL and manufactures pet food for distribution in the United States.

9. Defendant Menu Foods Income Fund ("MFIF"), an unincorporated company with its principal place of business in the Province of Ontario, Canada. MFIF manufactured the pet food at issue in this action.

10. The events complained of occurred throughout the United States and in the State of Florida.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this class action under 28 U.S.C. §1332(d)(2), (d) (5)(B), (d) (6) because (i) there are 100 or more class members, (ii) the aggregate amount in controversy is at least $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendants are citizens of different states.

12. Venue in this Court is proper in that Defendants transacted business in this county and the conduct complained of occurred in this district, as well as elsewhere in Florida.

## FACTUAL ALLEGATIONS

13. Defendants MFL and MFIF purport to be the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other retail and wholesale outlets. In 2006, MFIF produced more than one billion containers of pet food.

14. Defendant MFL is the parent company of, and wholly-owns, both Defendant MFI, located in Pennsauken, New Jersey, and Defendant MFMC, located in Emporia, Kansas. MFI and MFMC are two of MFL's manufacturing facilities in the United States.

15. At least from December 3, 2006 through March 6, 2007, Defendants failed to adhere to proper safety standards and failed to ensure that the pet food they manufactured and sold was free from contamination. More specifically, on March 16, 2007, Defendant MFIF, the parent company of MFL, issued a press release whereby it announced the recall of a portion of the dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of MFL's facilities – MFI located in Pennsauken, New Jersey and MFMC in Emporia, Kansas.

16. Reportedly, 60 million cans and pouches of the pet food were recalled.

17. The recalled pet food was sold under more than 90 brand names, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. A list of all brand names that were recalled is contained on the Company's website and is attached hereto as Exhibit A. Retailers who sold the contaminated products include Ahold USA, Kroger Co., Safeway, Wal-Mart, Pet Smart, and Pet Value, among others.

18. MFL acknowledged receiving complaints in the United States which raised concern about pet food manufactured since early December 2006, and its impact on the renal health of the pets consuming the products. The Company has discovered that timing of the production associated with these complaints coincides with the introduction of an ingredient from a new supplier.

19. Stephen Sundlof, the Food and Drug Administration's (FDA) chief veterinarian, said that Menu Foods began its own taste tests of its pet food beginning February 27, 2007 in approximately 40 to 50 pets. Within a few days, animals began showing signs of sickness. In early March 2007, at least seven animals reportedly died.

20. Menu Foods announced its recall weeks later, on March 16, 2007.

21. The FDA has reported that it received numerous calls and complaints from owners of sick and deceased pets, who flooded phone lines at State FDA offices, as well as calls from veterinarians and pet food companies. See Los Angeles Times, March 20, 2007.

22. To date, there are 50 confirmed deaths. The FDA expects the death toll to rise.

23. The FDA said that the investigation is focused on problems with aminopterin in the wheat gluten used by MFL, which MFL claimed had been coming from a new supplier. Wheat gluten is a source of protein and was used to thicken the gravy in the pet food.

24. On March 30, 2007, the FDA announced that Defendants' recalled pet foods also contained melamine, a chemical used to make plastics. Researchers also found melamine (used to produce plastic kitchen wares and used in Asia as a fertilizer) in the urine of sick cats, as well as in the kidney of one cat that died after eating the Menu Foods' wet food. The Commissioner of the New York State Department of Agriculture and Markets noted that neither aminopterin nor melamine should be in pet food.

25. On March 30, 2007, MFIF confirmed that on March 6, 2007 it had ceased using the Chinese company that supplied it with the contaminated wheat gluten.

## PLAINTIFF'S INJURIES

26. Plaintiff owned a dog named Yuri. During February and March 2007, Plaintiff fed her dog Publix and Ol'Roy canned dog food, now listed on the Company's recall list as contaminated products.

27. Yuri was a dog who was approximately 14 ½ years of age. Until ingesting the contaminated pet food, Yuri was in very good health and had no recent medical conditions.

28. On February 26, 2007, Plaintiff noticed took Yuri to a veterinarian because he was drinking a lot of water and vomiting. Despite taking antibiotics, Yuri had significantly increased thirst and water consumption, as well as urinary output. He developed a kidney infection and was dripping urine and blood. Blood work showed cancer cells. Yuri continued to decline, becoming more and more listless and lethargic, until March 9, 2007, when he ceased moving altogether and Plaintiff, upon learning that nothing more could be done for him, made the difficult decision to euthanize him.

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated.

30. The class which Plaintiff seeks to represent are composed of:

All persons in the United States who have incurred costs as a result of their pets becoming ill or passing away from ingesting any of the pet food brands manufactured by Defendants during the period commencing December 3, 2006, and ending March 6, 2007 (the "Class Period") that were recalled by Defendants.

31. The class is composed of thousands, and possibly millions, of persons, the joinder of whom is not practicable. The disposition of their claims in a class action will benefit both the parties and the Court. It has been estimated that thousands of cats and dogs have become ill and hundreds have died so far from ingestion of the contaminated pet food throughout the United States during the Class Period, and thus the Class is sufficiently numerous to make joinder impracticable, if riot impossible.

32. There are questions of fact and law which are common to all members of the class, including, inter alia, the following:

    a. Whether Defendants breached any express or implied warranties when they manufactured and sold the contaminated pet food;

    b. Whether Defendants negligently manufactured and sold the contaminated pet food; and

    c. Whether the Class has been damaged, and if so, the appropriate measure of damages including the nature of the equitable relief to which the class is entitled.

33. The above common issues of fact and law predominate over any arguable individualized issues.

34. Plaintiff's claims are typical of the claims of the other members of the class because Plaintiff's and all of the Class members' damages arise from and were caused by having purchased and fed the contaminated pet food to their pets. As a result, the evidence and the legal theories regarding Defendants' alleged wrongful conduct are identical for Plaintiff and all of the Class members.

35. Plaintiff will fairly and adequately protect the interests of the members of the Class, and Plaintiff has no interests which are contrary to or in conflict with those of the Class they seek to represent. Plaintiff has retained competent counsel experienced in class action litigation to further ensure such protection and to prosecute this action vigorously.

36. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the party opposing the class and would lead to repetitious trials of the numerous common questions of facts and law. Plaintiff does not believe that any difficulty will be encountered in the management of this litigation that would preclude its maintenance as a class action. Plaintiff believes and therefore avers that claims are small in relation to the costs of an individual suit, and a class action is the only proceeding pursuant to which Class members can, as a practical matter, recover. As a result a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

37. Proper and sufficient notice of this action may be provided to the Class members through notice published in appropriate publications.

38. Plaintiff and the members of the Class have suffered irreparable harm and damages as a result of the Defendants' wrongful conduct as alleged herein. Absent representative action, Plaintiff and the members of the Class will continue to suffer losses, thereby allowing these violations of law to proceed without remedy.

## COUNT I
## BREACH OF EXPRESS WARRANTY

39. Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

40. Defendants expressly warranted that the contaminated brands of pet food were, in fact, ingestible food that was safe for consumption by dogs and cats.

41. In addition, Defendants made numerous express warranties about the quality of its food and its manufacturing facilities. For example, Menu Foods touts the claim that it "manufacture[s] the private-label wet pet-food industry's most comprehensive product program with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

42. Members of the Class were induced by Defendants' labeling, advertising and marketing the contaminated brands of pet food as "food" to rely upon said express warranty, and did so rely in purchasing the contaminated brands of pet food and feeding them to their pets.

43. In reliance on Defendants' untrue warranties, Plaintiff and the Class purchased the contaminated pet food and fed that food to their pets.

44. Plaintiff and members of the Class sustained damages as a proximate result of said breach of warranty.

## COUNT II
## BREACH OF IMPLIED WARRANTY
## OF MERCHANTABILITY

45. Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

46. Defendants are merchants pursuant to sections 2-104 and 2-314 of the Uniform Commercial Code with respect to pet foods.

47. Through Defendants' marketing, labeling, and sales, Defendants impliedly warranted that the contaminated pet food, which was sold to Plaintiff and Class members and fed to their pets, was fit for the ordinary purpose for which it was intended, namely, to safely feed

and nourish pets without any resulting negative health effects, pursuant to section 2-314 of the Uniform Commercial Code.

48. Through Defendants' marketing, labeling, and sales, Defendants knew that Plaintiff and Class members would purchase the contaminated pet food at issue for the ordinary purpose of feeding their pets.

49. Defendants manufactured, labeled, advertised, sold, and distributed the contaminated pet foods at issue for the ordinary purpose for which it was purchased by Plaintiff.

50. Plaintiff and Class members purchased and used the contaminated pet foods for the ordinary purposes for which such goods are sold, namely feeding them to their pets.

51. Plaintiff and Class members relied upon Defendants' representations and claims in purchasing the contaminated pet foods.

52. The contaminated pet foods purchased by Plaintiff and Class members were unfit for their ordinary purpose when sold. In fact, such pet foods were contaminated and caused severe illness and/or death of the pets that consumed them. Therefore, Defendants breached the implied warranty of merchantability in the sale of the contaminated pet foods at issue.

53. Plaintiff and members of the Class sustained damages as a proximate result of said breach of warranty.

## COUNT III
## NEGLIGENCE

54. Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

55. Defendants owed a duty to pet owners who purchased its products to ensure that their pet food was safe for pets to consume and free from contamination, such that no pets consuming these products would be injured or die as a result of such consumption.

56. Defendants breached said duty as described herein above when they failed to adhere to proper safety standards and failed to properly ensure the safety of their products when they sold contaminated pet food, proximately causing damage to Plaintiff and members of the Class.

57. As a proximate result of the Defendants' conduct described herein, Plaintiff and members of the Class have suffered damages as a result and continue to suffer damages as a result of the contamination of Defendants' pet food.

## COUNT IV
## UNJUST ENRICHMENT

58. Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

59. As a direct, proximate, and foreseeable result of Defendants' acts and otherwise wrongful conduct, Plaintiff suffered damages. Defendants profited and benefited from the sale of their pet food, even as the pet food caused Plaintiff to incur damages.

60. Defendants have voluntarily accepted and retained these profits and benefits, derived from consumers, including Plaintiff, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, consumers, including Plaintiff, were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants or that reasonable consumers expected. Plaintiff purchased pet food that she expected would be safe and healthy for her pet and instead has had to now endure the illness of her beloved pet.

61. By virtue of the wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of the Plaintiff who is entitled to, and hereby seeks, the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues triable by right before a jury.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff prays for judgment as follows:

1. That this Court certify this action as a Class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and appoint Plaintiff and her counsel to represent the Class;

2. That this Court enter judgment and award damages in favor of Plaintiff and the Class, and against Defendants under the theories alleged herein;

3. That this Court award Plaintiff all attorneys' fees, expenses and costs of this suit;

4. That this Court award Plaintiff pre-judgment and post-judgment interest at the maximum rate allowable by law, compounded daily; and

5. That this Court grant such other, further, and different relief that the Court deems necessary, just, and proper.

Dated: April 10, 2007

Respectfully submitted,

/s/ Scott Wm. Weinstein

Scott Wm. Weinstein
Florida Bar No. 563080
Morgan & Morgan, P.A.
12800 University Drive, Suite 600
Fort Myers, FL 33907
Telephone: (239) 433-6880
Facsimile: (239) 433-6836
Email: sweinstein@forthepeople.com

12

Gary E. Mason
The Mason Law Firm, L.L.P.
1225 19th Street, NW
Suite 500
Washington, D.C. 20036
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
Email: gmason@masonlawdc.com

Attorneys for Plaintiff and the Class